# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

DELORES L. KNIGHT,        )
        )
        Petitioner,        )
        )
v.        )        Civil Action No. 1:20-00315
        )
M.E. REHERMAN, Warden,        )
        )
        Respondent.        )

### PROPOSED FINDINGS AND RECOMMENDATION

On April 29, 2020, Petitioner, acting *pro se*, filed her Emergency Petition Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody. (Document No. 1.) Specifically, Petitioner appears to be requesting relief pursuant to the First Step Act of 2018 and Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). (Id.) Petitioner notes she was sentenced on May 10, 2017, to 120 months of incarceration following her conviction of conspiring to commit health care fraud in violation of 18 U.S.C. § 1349, committing health care fraud in violation of 18 U.S.C. § 1347, and committing money laundering in violation of 18 U.S.C. § 1957(a) and (b)(i). (Id.) Petitioner states that she requested compassionate release under the First Step Act, but the BOP has failed to respond to her request that was submitted more than 30 days ago. (Id.) Petitioner further contends that she is qualified for early release based on the following: (1) Petitioner is over the age of 70; (2) Petitioner is "handicapped" and suffers from asthma; (3) Petitioner has the lowest security level and is not a risk to society; and (4) "COVID-19 pandemic puts 74 years old Knight's life at high risk and qualifies as 'extraordinary and compelling reasons warranting a reduction in her sentence to time served." (Id.) Petitioner, therefore, concludes that she is entitled to either compassionate release or home confinement. (Id.) As Exhibits, Petitioner

attaches the following: (1) A copy of Petitioner's security classification (Document No. 1-1, p. 1.); (2) A copy of Petitioner's "Inmate Request to Staff" dated March 6, 2020 and April 11, 2020 (Id., pp. 2 - 3.); and (3) A copy of Petitioner's "Individualized Reentry Plan – Initial Classification" dated August 1, 2017 (Id., p. 4.).

By Order entered on May 7, 2020, the undersigned ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 4.) On May 18, 2020, Respondent filed her Response to the Order to Show Cause. (Document No. 8.) Respondent argues that Petitioner's Petition should be dismissed based on the following: (1) "Only the Petitioner's sentencing court has subject matter jurisdiction to grant Petitioner's reduction in sentence request" (Id., p. 4.); and (2) "The authority to release inmates to home confinement rests solely with the BOP." (Id., pp. 4 – 6.). As Exhibits, Respondent attaches the following: (1) The Declaration of Nacole Howard (Document No. 8-1, pp. 2 – 4.); (2) A copy of Petitioner's "Public Information Inmate Data as of 05-13-2020" (Id., pp. 6 – 8.); (3) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., pp. 10 - 21.).

By Order and Notice entered on May 19, 2020, the undersigned notified Petitioner of her right to file a Reply to Respondent's Response. (Document No. 10.) Petitioner, however, failed to file a Reply.

## **ANALYSIS**

1. **Motion for Compassionate Release:**

Pursuant to 18 U.S.C. § 3582, a Court may modify or reduce a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons

2

to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . .."[1] 18 U.S.C. § 3582(c)(1)(A). If such circumstances exist, the sentencing court may modify or reduce the term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a), and finding that "extraordinary and compelling reasons warrant such a reduction and "that a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

In the instant case, it is clear that Petitioner is seeking compassionate release pursuant to Section 3582. Repeatedly citing Section 3582, Petitioner claims that "extraordinary and compelling reasons" warrant such a reduction and that a reduction is consistent with applicable policy statements issued by the Sentencing Commission. (Document No. 1.) Petitioner, therefore, requests that this Court reduce her sentence to timed served. (Id.) A Section 3582 Motion requesting compassionate release, however, must be filed with the sentencing court. See 18 U.S.C. 3582(c)(1)(A); also see Young v. Warden of FCI Williamsburg, 2020 WL 4195166, * 4 (D.S.C. May 27, 2020), *report and recommendation adopted by*, 2020 WL 4194629 (S.D.W.Va. July 21, 2020)(This Court "has no authority under the First Step Act to consider a request for compassionate release since Petitioner was not sentenced in this Court. Only a sentencing court can allow a sentence reduction/compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which means that the process must be undertaken in the district court where the prisoner was sentenced."); Bart v. Reherman, 2020 WL 3421774, * 6 (S.D.W.Va. April 8, 2020), *report and recommendation adopted by*, 2020 WL 3421481 (S.D.W.Va. June 22, 2020)(stating that "[c]ourts in this Circuit

---

[1] Prior to the First Step Act of 2018, the BOP had to file a motion with the court requesting the inmate's early release. Now the First Step Act allows the defendant to be considered for early release if either (1) the BOP has tendered to the Court a motion for the inmate's early release, or (2) the inmate has fully exhausted all administrative remedies concerning the BOP's failure to present the motion for the inmate's early release.

3

and elsewhere have consistently found that a § 2241 petition is not the appropriate mechanism by which to raise a request for compassionate release under § 3582, as such a request must instead be brought in the sentencing court.")(collecting cases); Deffenbaugh v. Sullivan, 2019 WL 1779573, * 2 (E.D.N.C. April 23, 2019)("If petitioner now seeks to file his own motion for compassionate release, such a motion must be filed in the sentencing court."); Robinson v. Wilson, 2017 WL 5586981, * 5 (S.D.W.Va. Sept. 26, 2017), *report and recommendation adopted by*, 2017 WL 5586272 (S.D.W.Va. Nov. 20, 2017)("Like a § 2255 Motion, a § 3582 motion must be filed in the movant's underlying criminal action and addressed by the sentencing court."). Clearly, Petitioner sentenced in the Northern District of Ohio. (Document No. 8-1, p. 7.); United States v. Knight, Case No. 1:15-cr-00222 (N.D.Oh. May 30, 2017). Accordingly, the undersigned finds that this Court is without jurisdiction to consider Petitioner's motion for a reduced sentence or compassionate release pursuant to the First Step Act.

## 2.    **CARES Act:**

Next, Petitioner appears to seek release to home confinement pursuant to the CARES Act. The CARES Act expanded the maximum period an inmate may spend on home confinement. The CARES Act provides "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner on home confinement." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). On April 3, 2020, the Attorney General determined that emergency conditions were materially affecting the functioning of the BOP, and thereby triggered the BOP's authority to expand the amount of time that an inmate may spend on home confinement. Thus, the CARES Act gives the BOP discretion and authority to place inmates in "prerelease custody" under 18 U.S.C. § 3624(c)(2)." See BOP Program Statement No. 7320.01.

4

Prior to the CARES Act, Section 3624(c)(2) limited the BOP's authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The CARES Act, however, temporarily suspends the above limitation. The CARES Act, as implemented by the Attorney General, expanded the authority of the BOP to review "all at-risk inmates – not only those who were previously eligible for transfer." Id. The CARES Act, however, "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, * 1 (D.N.J. April 9, 2020)(emphasis added). The Attorney General issued guidance for "prioritizing" home confinement for "at-risk inmates who are nonviolent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." See BOP Program Statement No. 7320.01. The BOP is to "consider the totality of circumstance for each individual inmate" based on the following non-exhaustive factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has demonstrated the verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility; and

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offense, will render an

> inmate ineligible for home detention. Other serious offenses should weigh more
> heavily against consideration for home detention.

<u>Wagg v. Ortiz</u>, 2020 WL 2745247, * 10 (D.N.J. May 27, 2020). As clearly stated above, an

inmate's qualification for early release on home confinement under the CARES Act is an

individualized determination by the BOP.

In her Response, Respondent argues that Petitioner's request for home confinement

pursuant to the CARES Act should be denied. (Document No. 8.) First, Respondent contends that

Petitioner should not receive prioritized review concerning home confinement placement. (<u>Id.</u>) In

support, Respondent submits the Declaration of Nacole Howard, a Case Manager at FPC Alderson.

(Document No. 8-1, pp. 2 – 4.) Ms. Howards declares that in her position she has access to

SENTRY, the Bureau of Prisons' online system that "tracks the status and activities of inmates

while in federal custody, Judgment and Commitment files, Administrative Remedies, and Central

Files." (<u>Id.</u>) Ms. Howard further explains that Petitioner is assigned to her caseload and states as

follows in her Declaration:

> 6.    In response to the passing of the CARES Act, and the subsequent finding
> of the emergency conditions by the Attorney General due to the COVID-19
> Pandemic, the BOP has instituted new procedures to efficiently evaluate
> inmates for home confinement eligibility, in many cases, regardless of
> whether the particular inmate has requested such evaluation. In order to
> make efficient use of the BOP's available resources, BOP is prioritizing the
> review of certain inmates for home confinement suitability by generating
> lists of candidates most likely to be appropriate for home confinement.
> These lists are generated by filtering criteria through SENTRY. These lists
> are then provided to the Unit Team staff to review and, if appropriate, make
> home confinement referrals.
>
> 7.    If an inmate is not independently identified as a home confinement
> candidate by the BOP through this process, the inmate may request that they
> be reviewed to determine if they are appropriate for referral. Petitioner has
> not made such a request.
>
> 8.    Several factors have been identified as relevant in assessing whether an
> inmate is suitable for home confinement, such as whether they have a

verifiable release plan, their recidivism risk level, whether the inmate currently has a detainer, and various other criteria.

9.    Currently, the BOP is prioritizing home confinement review for those inmates scored as a minimum recidivism risk and who have served 50% or more of their sentence, or have 18 months or less remaining on their sentence and have served 25% or more of their sentence.

10.    As of May 15, 2020, I have been provided numerous SENTRY generated lists of potential candidates for home confinement review, none of which include Petitioner.

11.    Though Petitioner's name has not been included on any of these SENTRY generated lists, I nevertheless conducted a review to independently determine if any of the inmates assigned to my caseload would be prioritized for home confinement referral. In reviewing Petitioner's records, I determined that she would not receive prioritization, as she has only served approximately 27% of her sentence, and has a release date in 2026.

(Id., pp. 2 – 3.) Additionally, Respondent contends that this Court lacks authority to order Petitioner be placed on home confinement. (Document No. 8, pp. 4 – 6.) Therefore, Respondent argues that Petitioner's request for home confinement pursuant to the CARES Act should be denied. (Id.) Petitioner has failed to file a Reply to the foregoing.

First, the undersigned finds that this Court does not have authority to order that Petitioner be placed on home confinement. See 18 U.S.C. § 3621(b). Pursuant to Title 18 U.S.C. § 3621, the BOP has authority to designate a prisoner's place of imprisonment. See also Trowell v. Beeler, 135 Fed.Appx. 590, 595 (4th Cir. 2005)(finding that "BOP must exercise its own independent judgment" under Section 3621(b)). As explained above, the CARES Act merely expanded the BOP's authority to transfer a prisoner to home confinement. See Tillman v. Rickard, 2020 WL 2114571, * 1 (S.D.W.Va. May 4, 2020)(J. Faber)("The CARES Act . . . vests greater discretionary authority to the Director of the Bureau of Prisons to lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement."). The CARES Act did not grant courts authority to make decisions as to a prisoner's placement. See Hardin v. Acting

Warden F.C.I. Edgefield, 2020 WL 3259761, * 4 (D.S.C. May 6, 2020)("[A]lthough the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, this court lacks jurisdiction to order home detention for Petitioner under this provision."); United States v. McCann, 20202 WL 1901089, * 3 (E.D.Ky. April 17, 2020)(finding that "the Court has no authority under [the CARES Act] to order that a prisoner be placed on home confinement"); United States v. Read-Forbes, 2020 WL 1888856, * 5 (D.Kan. Aril 16, 2020)("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Engleson, 2020 WL 1821797, * 1 (S.D.N.Y. April 10, 2020)(the "ultimate decision of whether to release an inmate to home confinement rests with the BOP"); also see McCarson v. Reherman, 2020 WL 2110770, * 2 (D.S.C. May 4, 2020)("The decision of whether to release an inmate to discretionary home confinement rest solely with the Bureau of Prisons."). Thus, the undersigned finds that this Court lacks authority to grant Petitioner's release to home confinement. The undersigned further finds that Petitioner has been appropriately considered for prioritized review of home confinement placement based on the CARES Act. The record reveals that Petitioner has not served 50% or more of her sentence, and she has more than 18 months remaining on her sentence. Thus, Petitioner is not entitled to prioritized review. Based upon the foregoing, the undersigned finds that Petitioner is not entitled to relief base upon the CARES Act.

**3.    Failure to Exhaust:**

Finally, Respondent notes that Petitioner has failed to properly exhaust her administrative remedies. (Document No. 8, p. 4, fn. 1.) Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative

remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4),

9

or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not exhaust her administrative remedies. (Document No. 8, p. 4, fn. 1.) In support, Respondent attaches the Declaration of Ms. Howard. (Document No. 8-1, pp. 1 – 4.) Specifically, Ms. Howard states that "Petitioner has not exhausted her administrative remedies regarding a request for reduction in sentence or for a request for home confinement." (Id., p. 4.) Petitioner failed to file a Reply disputing the foregoing. Additionally, a review of Petitioner's "Administrative Remedy Generalized Retrieval" reveals that Petitioner failed to fully exhaust her administrative remedies concerning her request for early release or home confinement based upon

10

the COVID-19 pandemic. (Document No. 8-1, pp. 9 – 21) The undersigned, therefore, further finds that Petitioner's Section 2241 Petition should be dismissed for failure to exhaust. See <u>Defoggi v. United States</u>, 2020 WL 2899495 (D.N.J. June 3, 2020)("Because the BOP's interpretation of the CARES Act is reasonable as applied to Petitioner and because he has not shown that the BOP has failed to provide adequate safety measures, he will not be prejudiced by dismissing the petition as unexhausted."); <u>also see</u> <u>United States v. Thompson</u>, 2020 WL 2121371, * 2 (S.D.W.Va. May 5, 2020)(J. Goodwin)("Though some district courts have waived Section 3582's exhaustion requirement because of the COVID-19 pandemic, the majority of district courts – albeit some with little to no discussion – have found that failure to exhaust administrative remedies is a death knell to a defendant's request for compassionate release.")

Based upon the foregoing, the undersigned respectfully recommends that Petitioner's Emergency Section 2241 Petition (Document No. 1) be denied.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Emergency Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241(Document No. 1) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed

11

Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: August 5, 2020.



Omar J. Aboulhosn
United States Magistrate Judge

12